```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JANE DOE,
```
                              Plaintiff,                       **ORDER**
                                                                     20-CV-5402 (GRB) (ARL)

    -against-

SHARON J. CUCHEL, in her capacity as Executrix
of the Estate of Stephen J. Cuchel,

                              Defendant.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Brown, is the motion of the plaintiff, Jane Doe ("Doe"), seeking to preclude the testimony of the defendant's expert, Alexander Sasha Bardey, M.D. ("Dr. Bardey"), pursuant to Rule 702 of the Federal Rules of Evidence. The plaintiff asserts that Dr. Bardey's opinions regarding her credibility and the credibility of her former therapist, Gregory C. Krueger ("Krueger"), are inadmissible. Specifically, Doe contends that none of Dr. Bardey's opinions are the result of any specialized knowledge or methodology nor are they recognized in the scientific community. For the reasons set forth below, the motion is granted, in part.

BACKGROUND

      A.    **Factual Averments**

      The underlying facts of this case are summarized in Doe's memorandum. According to Doe, in the summer of 1967, when she was sixteen years old, she traveled by herself from her home in Missouri to New York to visit her older cousin, Anita, who was married to the defendant, Stephen Cuchel ("Cuchel"), a practicing dentist. During the trip, Cuchel offered to pierce Doe's ears at his dental office. Doe alleges that while she was lying on the table

recovering from the piercing, two adult males entered the room and, along with Cuchel, surrounded her.[1] Doe claims Cuchel and his accomplices removed her clothing and took turns digitally penetrating her vagina and fondling her breasts.

Doe contends that for many years she attempted to forget about the horrors of what had happened to her. She further states that she did not feel that she could talk to anyone about what had transpired. Nonetheless, at some point following the incident, Doe was prescribed Seconal, a barbiturate, for "other reasons." Not long thereafter, Doe overdosed on the Seconal and was hospitalized for a week. After recovering, Doe went to college, got married, started a family and developed a career. From 2005 to 2010, Doe was treated by Krueger for depression and anxiety. From 2006 to 2014, she was also treated for a major depressive disorder by Dr. David Krojanker.

B.     Procedural History

Fifty-three years after the alleged incident, Doe commenced the instant action against Cuchel pursuant to the New York Child Victims Act. On January 18, 2022, pursuant to Fed. R. Civ. P. Rule 25(a)(1), defense counsel filed a Suggestion of Death as to Cuchel.[2] On April 8, 2022, the Court granted the plaintiff's unopposed motion to amend the caption to substitute Sharon J. Cuchel, in her capacity as Executrix of the Estate of Stephen J. Cuchel ("the Estate"), in place of Cuchel.

On May 18, 2022, the Estate produced its expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2). Specifically, the Estate designated Dr. Bardey as its expert witness and served Doe with his report and other required materials. In his report, Dr. Bardey offers the following opinion:

---

[1] The defendant notes that one of the alleged accomplices, Jerry Ginden, resided in Kansas in 1967. Def.'s Mem. at 6.
[2] When the action was commenced, Cuchel was suffering from dementia. Cuchel's alleged accomplices are also deceased. Def.'s Mem. at 1.

> [Doe] has not suffered a marked psychiatric and emotional injury as a result of the incident of sexual abuse that allegedly occurred in 1967. Given the demonstrable maintenance of her high level of functioning across numerous domains throughout the majority of her life, it is highly improbable that [Doe's] manifested symptoms are directly or proximately causally related to the incident in question. To the extent that the alleged incident could have been contributory, it is opined that her symptomology does not rise to a clinically significant degree of functional impairment and consequently fails to substantiate a meaningful nexus between the incident and her symptomology.

Lax Decl. Ex. D. More specifically, Dr. Bardey has testified that "[Doe] has not manifested any trauma-response symptomology that would otherwise generally be present in one who has been a victim of sexual abuse, particularly one who has not consistently sought mental health treatment for an extended period of time." Lax Decl. Ex. E, 202:14-204:8. Dr. Bardey also suggested, in his report, that Doe's business dispute with Cuchel's children undoubtedly influenced her decision to commence the instant action.[3] *See* Lax Decl. Ex. D. Finally, Dr. Bardey questioned the reliability of the letter Doe's former therapist, Gregory C. Krueger ("Kruger"), submitted at Doe's behest in which he claimed to have recalled Doe reporting the abuse. *Id.* Dr. Bardey noted that the letter was prepared at Doe's request and that Krueger permitted her to make corrections. *Id.* Moreover, Dr. Bardey also noted that, at her deposition, Doe had explicitly denied that she had engaged in any sort of communications with. Krueger after she discontinued treatment with him in 2010. Accordingly, Dr. Bardey opines that the veracity of Krueger's recollections and his ultimate conclusions are indisputably fabricated and improperly manufactured at his former client's direct request. *Id.*

At his October 14, 2022 deposition, Dr. Bardey was questioned about these "credibility determinations" and testified that part of a proper forensic psychiatric evaluation is to assess the

---

[3] According to the defendant, three months after Helene Ginden, the wife of one of the alleged accomplices, Natalie Cuchel, the daughter of the defendant, and Karen Cuchel rejected Doe's financial proposal regarding the family scrapyard business, Doe, for the first time, asserted the claim of sexual abuse. Def.'s Mem. at 1.

credibility of the subject. Lax Decl. Ex. E, 37:2-19. Doe vehemently disagrees. She contends that Dr. Bardey's credibility assessment was not the product of any recognized psychiatric or medical methodology but was instead Dr. Bardey's subjective consideration colored by the defendant's litigation objectives. As noted above, Doe also takes issue with the fact that Dr. Bardey offered his assessment as to the credibility of her therapist's testimony.

Moreover, Doe complains that Dr. Bardey failed to discuss her Seconal overdose in his report. In fact, Doe claims that during his evaluation of her, Dr. Bardey did not even question her about the overdose despite the fact that she had described it during her deposition. Dr. Bardey responds that the Seconal overdose is not referenced in the report because Doe failed to raise the overdose in response to questions he posed to her during his interview. *See* Lax Decl. Ex. E, 134:17-34. For example, Dr. Bardey notes that Doe did not mention the overdose when he asked her if she had any history or struggles with substance use of any kind. *Id.* 136:24-137:9.

Finally, Doe complains that Dr. Bardey failed to address the diagnosis and treatment she received from Dr. Krojanker for major depressive disorder or her prescription for Trozadone.

## DISCUSSION

"'The legal framework for admission of expert testimony is provided by the Federal Rules of Evidence [702 and 703], along with [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)] and its progeny.'" *CA, Inc. v. AppDynamics, Inc.,* No. 13-CV-2111 WFK SIL, 2015 WL 1606638, at *1 (E.D.N.Y. Apr. 8, 2015) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1313–14 (Fed. Cir. 2014)). Pursuant to Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a)

4

> the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is the product
> of reliable principles and methods; and (d) the expert has reliably applied the
> principles and methods to the facts of the case.

Fed. R. Evid. 702. "The Supreme Court has stated that Rule 702 requires district courts to act as gatekeepers to assure that all expert testimony is both reliable and relevant." *CA, Inc.,* 2015 WL 1606638, at *2 (citing *Daubert,* 509 U.S. at 589).

"[W]hether expert testimony is admissible at trial is a question of law which rests squarely within the broad discretion of the trial judge." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 729 (E.D.N.Y. 2016) (citing *Hilaire v. DeWalt Indus. Tool Co.,* 54 F. Supp. 3d 223, 234 (E.D.N.Y. 2014)). In fact, the standards trial courts employ to determine whether expert testimony is admissible are liberal and flexible. *Id.* However, "where an expert's testimony is 'bottomed upon nothing more than mere speculation and guesswork' the *Daubert* inquiry ensures that 'junk science' will be barred from the courtroom." *Id.*

"The Court's first step in considering whether expert testimony will be admitted into evidence is a determination of whether the proffered expert is qualified by virtue of some specialized 'knowledge, skill, experience, training or education.'" *Id.* (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). In this case, Dr. Bardey has been a board certified psychiatrist for thirty years and is a practicing forensic psychiatrist. *See* Keating Decl. Ex. A. Among other things, Dr. Bardey is the Director of Forensic Psychiatry for the Nassau County Department of Mental Health and was the Director of Psychiatry at Riker's Island, Prison Health Services, Inc. *Id.* He is also a contract provider of consultative psychiatric services to the New York State Unified Court System and a regular consultant on forensic psychiatric matters to the United States Attorney's Office, the New York County District

5

Attorney's Office, the Federal Defender's Program, the Capital Defender Program and the Legal Aid Society in both criminal and civil matters. *Id.* In addition, he has been a member of the American Board of Forensic Examiners for nearly 30 years and has conducted thousands of forensic psychiatric evaluations. *Id.* In fact, according to Dr. Bardey, he has been qualified as an expert witness in forensic psychiatry between "25 and 50 occasions" in the federal courts located in the Eastern and Southern Districts of New York. Bardey Aff. ¶ 3. Finally, with specific interest to this case, Dr. Bardey claims that he is regularly hired to conduct forensic psychiatric evaluations for both defendants and plaintiffs in matters involving allegations of sexual abuse. *See* Lax Decl. Ex. E, 122. As such, given Bardey's background, education, training and experience in the field of psychiatry, the undersigned finds that he is qualified to testify.

Having found that Bardey's background qualifies him to render an expert opinion in this case, the Court turns its attention to the question of whether his testimony is reliable. "In determining the reliability of the reasoning and methodology underlying an expert's testimony, the Court is guided by the standards set forth in *Daubert* which requires the Court to make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Lara*, 174 F. Supp. 3d at 733 (citing *Daubert,* 509 U.S. at 592–93, 113, 113 S. Ct. 2786). "Among the factors to be evaluated . . . are: (1) the ability to test the expert's methodology or reasoning; (2) whether the expert's theory has been subjected to peer review and publication; (3) its potential rate of error; and finally, (4) its general acceptance in the relevant scientific community." *Id.* (citing *Daubert.* 509 U.S at 592–94, 113 S. Ct. 2786). However, these factors are not meant as a definitive checklist. *Id.* Indeed, "expert testimony may be based on 'experience alone—or experience in conjunction with other knowledge, skill, training or

education.'" *In re Mirena IUD Prod. Liab. Litig.,* 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016) (citing Fed. R. Evid. 702 Advisory Committee's Note). In fact, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'" *Id.* (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 156, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")).

Here, Bardey explains the method he used in reaching his conclusion as to Doe's response to the allege abuse in his report:

> As part of my evaluation, I reviewed Ms. Doe's personal, psychiatric, and vocational histories and I reviewed her understanding of the circumstances that led to her current emotional and psychological state. I performed a mental status examination in order to assess her intelligence, thought processes, cognitive functioning, memory, credibility, orientation, judgment, insight, and impulse control. The limits of confidentiality inherent to such an evaluation were explained to Ms. Doe.
>
> The Personality Assessment Inventory (PAI), a psycho-diagnostic test[4], was administered to help shed light into Ms. Doe's enduring personality traits, as well as her current emotional functioning. Ms. Doe was also administered the Trauma Scale Inventory-2 (TSI-2)[5] to assess the degree of impact of traumatic events on her collective functioning.
>
> The following documents were [also] reviewed:
>
> • Complaint, United District Court for the Eastern District of New York, Jane Doe v. Stephen J. Cuchel, dated November 6, 2020
>
> • Compromise and Settlement Agreement, dated June 2005
>
> • Deposition Transcript of Denise Doe, dated April 8, 2022

---

[4] According to Dr. Bardey, the Personality Assessment Inventory (PAI) is a test designed to assess the existence of psychopathology. It consists of between 100-300 nuanced questions which contains scales and sub-scales which are compared to a mean T score. *See* Lax Decl. Ex. E, 172-75. The defendant contends that the results of Doe's test revealed that she did not suffer with clinical pathology. Def.'s Mem. at 13.

[5] Dr. Bardey claims the TS1-2 is the gold standard test designed to measure the existence of trauma related pathologies and has validity scales to detect malingering. *See* Lax Decl. Ex. E, 194, 196.

7

> • Deposition Transcript of Dr. David Krojanker, dated April 19, 2022
>
> • Deposition Transcript of Gregory C. Krueger, Div., MSW, LCSW, dated April 19,2022
>
> • Deposition Transcript of Helene Ginden, dated April 19, 2022
>
> • Deposition transcript of Natalie Cuchel, dated April 20, 2022
>
> • Billing Summary Sheet, Dr. David Krojanker, MD, dated June 21, 2006 – December 16, 2014
>
> • Patient Information Sheet, Visits Report, and Letter, authored by Gregory C. Krueger, M. Div., MSW, LCSW, dated May 8, 2020
>
> • E-Mail Correspondence between Denise Doe and Gregory C. Krueger, dated April 17, 2020 to October 1, 2020.

*See* Lax Decl. Ex. D.

Dr. Bardey's report also describes the details of his interview with Doe, including Doe's report of prior mental health treatment. *Id.* In addition, Dr. Bardey describes Doe's self-reported personal history, including a happy high school experience, "enjoyable" away-college experience, post-college productive years of employment, a lengthy marriage and decades long ownership of the family scrapyard business. *Id.* Dr. Bardey also claims Doe denied experiencing any dreams, nightmares or flashbacks, which would be intrusive experiences reflective of trauma. *Id.* Finally, Dr. Bardey's report includes a description of the acrimony between Doe and the Cuchels in the lead-up to the commencement of this action as well as the email correspondence between Doe and her therapist in which she asks him to remember their talking about her "two cousins and a friend of theirs" who molested her at the age of 16 in New York. *Id.*

Although an expert witness may, as Dr. Bardey has done, testify to relevant physical or

mental conditions that affect credibility, *see Doe v. Hartford Sch. Dist.*, No. 2:16-CV-00206, 2018 WL 1064572, at *5 (D. Vt. Feb. 26, 2018), an expert is not permitted to directly opine on a witness's credibility based on his or her assessment of inconsistencies. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005)(finding lower court had erred in permitting an expert to testify that "he 'rejected' the possibility that [the police offices] had lied). Indeed, even when such evaluations are rooted in scientific or technical expertise, expert opinions that constitute evaluations of witness credibility are inadmissible under Rule 702. *Id.*

With these rules in mind, the Court finds that Dr. Bardey's report may include a description of his psychiatric testing and evaluation of Doe, including his review of her vocational and personal history and her account of the incident. He may also generally opine (1) that Doe has not suffered a marked psychiatric and emotional injury as a result of the incident of sexual abuse that allegedly occurred in 1967; (2) that it is highly improbable that Doe's manifested symptoms are directly or proximately causally related to the incident in question; and (3) that her symptomology does not rise to a clinically significant degree of functional impairment and consequently fails to substantiate a meaningful nexus between the incident and her symptomology. To the extent Doe disagrees with Dr. Bardey's conclusions about her mental health or her reaction to the alleged abuse, those disagreements can be explored on cross-examination. *See In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d at 419.

That said, Dr. Bardey cannot directly offer an opinion as to whether Doe or her therapist are telling the truth. To this end, Dr. Bardey's report must be scrubbed of any direct reference to the veracity of Doe's claim of abuse or her therapist's testimony, including, but not limited to, the list of references provided in Doe's reply memorandum:

- "Ms. [Doe]'s initial disavowal that the communications took place and her subsequent equivocation as to same, compounded by her spoliation of relevant

documentary evidence, *raises substantial doubt as to Ms. [Doe]'s sincerity, credibility,* and underlying motivations in commencing the instant claim. Logically pertinent to this, then*, is the question of her veracity of her purported recollections of the incident in totality."*

• "As a preliminary matter, *Ms. [Doe]'s underlying motivations to commence the instant action must be meaningfully considered.* . . . This, in conjunction with the fact that Ace began to experience financial hardship in 2016 (six years after Ms. [Doe] bought out Ace in its entirety), *begs the question as to whether Ms. [Doe]'s claims of psychological and emotional injury in the present action are grounded in legitimacy*, or solely motivated by materialism and a desire for retribution."

• "Moreover, the manner in which *the reported incident ensued also appears questionable at best and casts considerable doubt as to Ms. [Doe]'s iteration of the events.*"

• "This, coupled with the unequivocal fact that Ms. [Doe]'s clinical profile is actually devoid of trauma response symptoms (which will be further discussed), *calls into question the veracity of Ms. [Doe]'s reported recollection of the incident as it transpired* . . . ."

• "Primarily, *Ms. [Doe] demonstrated an intent to actively manipulate the content of any materials that were explicitly* intended to be used in connection to her pending legal claim, including the letter dated May 8, 2020, available for review. *This casts considerable doubt and concern as to her overarching pecuniary motivations, credibility, and character*."[6]

*See* Lax Decl. Ex. D (emphasis added). In addition, the Court finds that Dr. Bardey's entire review of what he refers to as Relevant Legal/Litigation History is precluded. To this end, his conclusions go far beyond his expertise as a psychiatrist and are a clear attempt to substitute his judgment about Doe's motivation for bringing the action for the jury's. *See Nimely,* 414 F.3d at 398. Accordingly, the current report is stricken. The defendant may, however, have Dr. Bardey prepare a revised expert report consistent with these rulings on or before April 14, 2023. In addition, the undersigned wishes to make clear that Dr. Bardey will be precluded from testifying

---

[6] This list of references provided by Doe are examples of improper statements. The Court wishes to make clear that any additional references to Doe's or Kruger's "credibility," "veracity" "Legitimacy" or the like must be stricken from the report.

at trial as to any of the credibility determinations discussed in this order.

Dated: Central Islip, New York  
       March 30, 2023

SO ORDERED:

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge